STATE EX REL. JAMES LEWIS GOEHLER, By His Guardian ad litem, Anna Goehler Meredith, Relator, v. RAYMOND E. LADRIERE, Circuit Judge, Division No. One, St. Louis County, Missouri.—No. 39568.—189 S. W. (2d) 986.

Division Two, November 5, 1945.

*Taylor R. Young, Walter Wehrle* and *Alvin Goldman* for relators.

*S. Mayner Wallace* and *John A. Nolan* for respondent.

WESTHUES, C.—This is an original proceeding in prohibition instituted by relator to restrain the respondent, Judge of the Circuit Court of- St. Louis County, Missouri, from proceeding in a cause pending in his court, wherein Charles A. Meredith is plaintiff and Anna Goehler Meredith; Taylor R. Young; Anna Marie Goehler; James Goehler, an infant; Henry Kronsbein; Laura Kronsbein; North Side Bank, a Corporation and Webe H. Naunheim, as Trustee for said North Side Bank are defendants. A preliminary writ was issued to which respondent filed a return. Relator filed a reply. The case was submitted upon the pleadings and the record as made in the circuit court.

From the record we learn that relator, James Lewis Goehler, a minor, defendant in the case pending before respondent judge, filed an application for continuance on the ground that he was then in the military service of the United States. Sec. 201 of the Soldiers' and Sailors' Civil Relief Act of Congress of 1940 was relied upon as ground for the continuance. Respondent judge, after hearing the parties on the motion to continue, denied the same, whereupon Goehler applied to this court for a writ of prohibition. A short history of the events leading up to this lawsuit will be necessary for an understanding of the issues as they were at the time respondent judge refused the continuance. On December 24, 1936, plaintiff, Charles A. Meredith, and the defendant, Anna Goehler Meredith, entered into an antenuptial agreement. They were married the same day. By this agreement they intended to settle all of their property rights. The

agreement provided that a certain parcel of real estate, being the home of Meredith, should be held by them as joint tenants and be a home for them, or the survivor, so long as they should live. It was further agreed that by deed the property was to be conveyed to them for life and to the children of Anna Goehler, that is, Anna Marie Goehler and relator herein, James Goehler. Deeds were executed pursuant to that agreement and the deed conveying the property to James Goehler and Anna Marie Goehler was delivered to Taylor R. Young in escrow to be delivered to the grantees when both Charles A. Meredith and his wife had departed this life. Taylor R. Young signed that agreement and agreed to keep the deed in escrow. The antenuptial agreement, instead of settling the property rights of the parties, became fertile seed from which a number of lawsuits soon grew. Within a short time Anna Goehler Meredith, the wife, began court proceedings. See Meredith v. Meredith, 151 S. W. (2d) 536 and Meredith v. Meredith, 166 S. W. (2d) 221. The record discloses that there were a number of other suits which did not reach the appellate courts for determination. One of the suits involved the validity of the antenuptial contract. The contract was sustained by a judgment. Taylor R. Young, who held the deed in escrow and who had signed that agreement, represented Mrs. Meredith in those lawsuits. The home place of Meredith, which by the deeds was made the property of Meredith and his wife jointly, was encumbered by a deed of trust. This deed of trust was foreclosed. The title to this property was, at the time plaintiff brought this suit, in the name of Henry Kronsbein and Laura Kronsbein. Plaintiff, Charles A. Meredith, in his petition alleged that the Kronsbeins held title to that property as trustees for the benefit of himself and his wife. Meredith further alleged that his wife had breached the terms of the antenuptial contract in many respects, setting forth in his petition the particulars as to the alleged breaches. He also alleged that his wife married him merely as a business venture and in bad faith and only for the purpose of obtaining his property. It was alleged that the consideration for the antenuptial contract failed and therefore the title to the property, that is, the home place, should be revested in him. Meredith in his petition enumerated the various lawsuits that had been tried between his wife and himself.

In an answer filed to this suit Mrs. Meredith alleged that the property in controversy was foreclosed under a deed of trust and that pursuant to an agreement between herself, her children and the Kronsbeins the title was placed in the name of the Kronsbeins to be held in trust for herself and her children. By way of cross-bill Mrs. Meredith alleged that plaintiff, Charles A. Meredith, had breached the antenuptial contract. She asked that the contract be canceled and that she be declared to be entitled to all of her marital rights as

the wife of Meredith, which she had agreed not to claim in the ante-nuptial contract.

A guardian ad litem was appointed for James Lewis Goehler but up to the time of his application for a writ of prohibition no answer had been filed for him. However, an answer was not essential because all the issues necessary for a complete determination of the case had been joined by Meredith's petition and the answers filed by his mother and the Kronsbeins. If Mrs. Meredith loses her lawsuit then her children will have no interest in the property. At the time of the alleged agreement between the mother and children and the Kronsbeins, the minor, James Lewis Goehler, was twelve years of age.

The suit which was stayed by the writ of prohibition was filed in August, 1943. On October 22, 1943, defendant, Anna Goehler Meredith, filed an answer and cross-bill. On February 18, 1944, she dismissed her cross-bill as to certain parties. On January 10, 1945, at *plaintiff's* suggestion, a guardian ad litem was appointed for the minor. On April 23, 1945, the defendants, Anna Marie Goehler and Taylor R. Young filed an answer. On the same day Anna Goehler Meredith filed a supplemental answer. Likewise on that day the defendants Kronsbeins filed an answer. Also on this day the defendant James Lewis Goehler, who had not filed an answer, filed his motion to stay the suit because he was in the military service. During the hearing on this motion it developed that the case had been set for trial for March 28, 1945, ▉ and that Taylor R. Young, attorney for the defendant, had the case continued because he desired to have the defendant, James Lewis Goehler, present at the trial or take his deposition. The case was then set for April 23. The defendant, James Lewis Goehler, was in St. Louis county at his home for several days during the week preceding April 23. He left before the day the case was set for trial. The young man was at the office of Mr. Young during those days. Note what transpired before the trial judge at the time the motion for continuance was being discussed:

"Mr. Young: Except that the boy did—I saw him on Friday. He came in for a few minutes and brought the affidavit back to my office, and went over and got a photostatic copy of that certificate and I attached it. Your Honor will see I didn't have that certificate when I prepared the affidavit, and didn't know anything about it, so that had to be inserted in the motion after it was prepared. That is all I know about it.

"Mr. Nolan: Mr. Young, you didn't contact me on Friday for the purpose of finding out whether it was agreeable to take the boy's deposition?

"Mr. Young: No, because the boy wanted to be with his folks. There isn't any question but what Mr. Nolan would have taken his deposition on Friday or Saturday, I am sure, but the boy didn't want to do it; he wanted to be with his folks.

"The Court: Do you want to make a statement for the record?

"Mr. Nolan: Well, I will just say this, your Honor; At the last setting of this case in this division, which was on the 28th of March, 1945, Mr. Young made a statement to the Court at that time that this young man, this defendant, was in . . . What was the name of that Camp he was in in Texas?

"Mr. Young: Camp Hood, I believe it was. It was in that other affidavit.

"Mr. Nolan: He.was in Camp Hood, Texas, and this cause was re-set in order to enable Mr. Young to contact the military authorities there and either arrange for a deposition or get the proper certificate on which to base his affidavit for Stay of Proceedings. I heard nothing further from Mr. Young until about a week or ten days ago when I was advised by Mr. Young that the young man was due to receive a furlough, and would pass through St. Louis and visit with his folks here, and would be here in person for the trial of this case.

"Mr. Young: Yes, we fully expected that.

"Mr. Nolan: And later on in the week, I am not sure whether it was Tuesday or Wednesday, I was advised by Mr. Young on the telephone that the young man would be in at eleven o'clock on the 19th, and again Mr. Young stated he would be here for the trial. I have at all times advised Mr. Young that I stood ready at all times to waive all exceptions as to time for the taking of this young man's deposition, either at the military camp or elsewhere in the United States. I received no telephone call from Mr. Young of the presence of the young man in town on Friday or Saturday."

In the face of that record the reply filed to the writ in the prohibition proceeding contained the following statement in answer to the charge that answers of certain defendants were not filed until April 23, 1945:

"In further reply to paragraphs VI and VII of the return, relators admit that there has been no answer or other pleading filed in said cause on behalf of said James Lewis Goehler, an infant, for the reason . . . that the guardian ad litem acting for said infant *and her attorneys* believed that proceedings in this cause would be stayed on account of the military service of said infant, . . . " (Italics ours.)

It is plain that the fact that the minor was in the military service was a trump card, kept in the coat sleeve, to be used when no other remedy for a continuance was available.

The above facts and others were before the trial court. For example, the plaintiff in that case, Charles A. Meredith, was a feeble and sick man, seventy-eight years of age, whose rights may well depend upon his evidence being given in a court room, while the relator's James Lewis Goehler's rights depend entirely upon those of his mother. The oral statements made by his attorneys show that

the only purpose for which Goehler was wanted at the trial was to testify as to an agreement with the Kronsbeins. The witness Goehler was at that time twelve years of age. The defendants, the Kronsbeins, Mrs. Meredith and her daughter Anna Marie were witnesses who could testify as to that agreement. James Lewis Goehler's interest can be well protected in his absence.

The question is, did the trial court abuse its discretion in refusing to grant the continuance in such circumstances? We think not. The Supreme Court of the United States in the case of Boone v. Lightner et al., 319 U. S. 561, in a well considered opinion with reference to the discretion and power of a trial court in connection with the Soldiers' and Sailors' Act, supra, said:

"Canons of statutory construction admonish us that we should not needlessly render as meaningless the language which, after authorizing stays, says 'unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.' "

The court concluded its opinion by stating:

"The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually *prima facie* prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use."

That is all that need be said in this case. The trial court was of the opinion, and we think correctly so, that the rights of James Lewis Goehler would not suffer even if his evidence were not taken. Note the discussion between court and counsel when the motion was under consideration:

"The Court: Mr. Young, this testimony that you say he would give, can just as well be given by his mother?

"Mr. Young: Yes. The only difference is, your Honor, a Court is entitled to have the benefit of the demeanor of the witness on the stand, and to size up the truth or the falsity of a witness' testimony;

. . .

"The Court: Well, this testimony that you say he would give, is not especially material anyway, is it?

"Mr. Young: Well, it goes to the very heart, your Honor, of the controversy.

"The Court: Is that your understanding of it?

"Mr. Nolan: Let me suggest, your Honor . . .

522

"Mr. Young: The answer of all the defendants and Mr. Kronsbein, who holds the title of this property, is that he bought this property for the benefit of these two children, and Mrs. Meredith for life. That is his testimony. His testimony has been taken; and that will be the testimony of Anna Marie Goehler; it would be the testimony of the soldier if he were here; and it will be the testimony of Mrs. Goehler.

"The Court: If that is true, you don't need Goehler's testimony at all, do you?"

Our preliminary writ was improvidently issued and is hereby quashed. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison, P. J.*, and *Tipton, J.*, concur; *Leedy, J.*, concurs in result.