**E. E. RUNGE, Guardian of Randolph Butrous, a Minor, Plaintiff**

**v.**

**Arthur S. FLEMING, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. 1129.**

United States District Court
N. D. Iowa, W. D.
March 3, 1960.

minor, under Section 205(g) of the Social Security Act, as amended, Title 42 U.S. C.A. § 405(g), for review of the decision on February 17, 1959, of the Appeals Council, Social Security Administration, affirming the Referee's, that Randolph Butrous, the illegitimate son of James Edward McCullough, was not entitled to the insurance benefits under the Act.

None of the material facts are in dispute. There is evidence which is sufficient to support the Referee's findings and to show: (1) that Randolph was born to Betty Jo Butrous out of wedlock under claim that James was the child's father; (2) that she for purpose of establishing paternity commenced action against James in the State District Court in March 1953, which, finally after the death of James, resulted in a judgment against his estate that Randolph was his son and heir, as such entitled to share in his estate, with provisions for $15 weekly support payments out of that estate, made retroactive to the birth date of Randolph; (3) that James' enlistment in the United States Air Force on January 18, 1952, in the main, was prompted by an intent to escape for as long a period as he could the immediate consequences of his illicit relations with Betty Jo and entry of the unfavorable judgment he expected in the paternity action; (4) that he, for those purposes, throughout his military service and until it ended by reason of his death on June 9, 1956, as a result of a drowning accident, successfully delayed entry of judgment in that action under the Soldiers' and Sailors' Civil Relief Act;[1] (5) that James at no time lived in the same house-

Harry H. Smith, Sioux City, Iowa, for plaintiff.

F. E. Van Alstine, U. S. Atty., and William R. Crary, Asst. U. S. Atty., both of Sioux City, Iowa, for defendant.

BECK, District Judge.

This is an action by E. E. Runge, as general guardian of Randolph Butrous, a

---

1. The transcript of the record in the paternity action in the State District Court, shows an application by James for a stay order under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.Appendix, § 501 et seq., Resistance to it by Betty Jo Butrous, Answer by James to such Resistance and Reply to that Answer, but no order for such a stay. It shows two Affidavits of Merit made by counsel for Betty Jo, one in April 1955, another in April 1956, to prevent dismissal of the paternity case. There were no other proceedings in the case, however, ex-

cept for the "Motion for Appointment of Administrator and Substitution of Parties Defendant" which was made after the death of James, a Resistance by the administrator to the claim of Betty Jo and the proceedings in 1957 which led to said final judgment. That record seems to have been the basis for the Referee's observation in his decision, as he called attention to the applications for the stay proceedings: *"Which stay was apparently granted."* (Emphasis supplied.)

hold with his son; (6) at no time did he make contributions to his support and (7) that applications by counsel for allotments for the child out of James' military pay were denied on the ground that involuntary payments could not be granted pending final favorable judgment in the paternity suit.

With that as a factual background, the Referee declared the issue to be: *"Whether or not the child, Randolph Butrous, is entitled to Child's Insurance Benefits on the earnings record of James Edward McCullough, deceased." "This"*, he held, *"depends on whether or not the child was dependent, as defined in Section 202(d) of the Social Security Act, upon James E. McCullough at the time of his death."* He also held, *"The only decisive issue relative to the determination of the dependency is the effect of the court order providing that payments for the child's support should be made retroactive to the time of the child's birthdate."* (Emphasis supplied.) Quoting applicable provisions of the Social Security Act and regulations promulgated thereunder, he referred to the following:

"Section 202(d) (1) (C) of the Social Security Act provides that in order to be entitled to child's insurance benefits, a child must, among other things, have been dependent on his father at the time of the father's death. Subsection (3) of section 202 (d) states:

"(3) A child who has not attained the age of eighteen shall be deemed dependent upon his father or adopting father at the time specified in paragraph (1) (C) unless, at such time, such individual was not living with or contributing to the support of such child and—

"(A) such child is neither the legitimate nor adopted child of such individual, or * * * *".

Section 404.316 of Social Security Administration Regulations No. 4 provides:

"Child's insurance benefits; dependency upon natural or adopting father. A child who has filed application for child's insurance benefits based upon the wages and self-employment income of a natural or adopting father is deemed to have been dependent upon such individual at the time such application was filed (if such individual was then living), or at the time of such individual's death (if such individual has died), if, at such time, such individual was either living with or contributing to the support of the child. However, even though the natural or adopting father was not living with or contributing to the support of the child at such time, the child is still deemed to have been dependent upon such individual unless the child:

"(a) Was neither the legitimate nor the adopted child of such individual; or * * * *".

That record, the Referee concludes, as the claim is denied, brings the case within the rule of Polo v. Hobby, D.C.Ill. E. Dist. 9–14–56, that:

"The obvious purpose of the Act is to provide benefits only in those situations where there has been a loss of support resulting from the death. In order that it may be shown that there was such a loss, it must be shown that some support was being furnished at the time death occurred.",

within the limitations suggested by the statement quoted by the Referee in Mocogni on Behalf of Lyons v. Hobby, D.C. R.I., 126 F.Supp. 472, 475 [2] :

"Unfortunately, the right of these children to benefits under this Act is not dependent upon any overt acts which they may have or may not

---

2. The claims for child's insurance benefits, in that case, were based on earnings of the father who was under court order to make payments to his children's support. He failed to make those payments

for several months prior to his death because of illness and inability to work. The court for that reason denied the claims.

have done; but rests entirely on the existence or non-existence of an economic relationship between the children and their father which has been terminated by the latter's death.",

and the restrictions as to the Act's extensiveness referred to in Stephens v. Federal Security Administrator, D.C.E. D.Ill., 121 F.Supp. 120 and Baetich v. Hobby, 2 Cir., 212 F.2d 480, certiorari denied 348 U.S. 831, 75 S.Ct. 54, 99 L. Ed. 656, which cases, while not exactly in point on the facts, nevertheless, according to the Referee, on principle are controlling.

But it is the plaintiff's position, on this review, that those rules and principles are not controlling because of factual differences between the cited cases and this one. As to the existence of such differences there can be no dispute. Immateriality status becomes apparent, however, as the facts in each of those cases are scanned and reduced to classification categories. Polo v. Hobby, for instance, turned on no loss of support having resulted from the insured wage earner's death. Mocogni on Behalf of Lyons v. Hobby was a case where the insured (father) should have contributed to support, but couldn't. Baetich v. Hobby involved one, where the insured (daughter) wanted to, but couldn't. In the case at bar the insured (father) wouldn't support and didn't and Stephens v. Federal Security Administrator, also a case of *"wouldn't and didn't"*, approved and quoted in the aforementioned cases and in Dowell v. Folsom, D.C., 157 F. Supp. 46, and in Schroeder v. Hobby, 10 Cir., 222 F.2d 713, refused to give significance to such differences as the court made the comment [121 F.Supp. 123]:

> "A minor child's entitlement to benefits under the Act is not dependent on any *overt acts he may or may not have done,* but on the existence or non-existence of an economic relationship which has been terminated by the death of the wage earner." (Emphasis supplied.)

*How* or *why* support may have been withheld by the insured wage earner, under the facts and the rule applied in these cases, is not material, the decisive fact is, *if,* he furnished actual support, when, in a case such as this one, *"contributing to the support"*, determines the outcome.

Economic relationship referred to in these cases has a restrictive policy basis, predicated on a child actually being in some degree dependent on contributions for support, which cease on the death of the insured wage earner. Social Security Act, as amended, Title 42 U.S.C.A. § 202(d) (1) (c), (3) (A), Social Security Administration Regulation No. 4, Section 404.316, Polo v. Hobby; Mocogni on Behalf of Lyons v. Hobby and Stephens v. Federal Security Administrator, supra.

The administrative results are also attacked on the ground that James, but for the sanctuary he was able to provide for himself under the Soldiers' and Sailor's Civil Relief Act, would have been compelled to contribute to the support of his son for some period of time before he lost his life in the drowning accident. Such a situation, it is strenuously urged, is tantamount to *"contributing to the support" of a child under the Act, as a matter of law.* In that connection it is contended that the Soldiers' and Sailors' Civil Relief Act, designed to protect the enlisted and the Social Security Act to assist dependent children, should be construed to prevent the results of a stay under the first from being used as a defense in an action to collect insurance benefits under the second. Liberal construction of both Acts, it is asserted— (without authoritative support however) —not only warrants but compels such a conclusion.

That argument should and could have been made in the state district court on Betty Jo's resistance to James' application for a stay under section 521, Title 50 U.S.C.A.Appendix (here it comes too late), which provides:

> "At any stage thereof any action or proceeding in any court in which

a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act (sections 501–548 and 560–590 of this Appendix), unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service. Oct. 17, 1940, c. 888, § 201, 54 Stat. 1181."

 Available to counsel in that part of the state court proceedings and material to the issues raised were the following rules: (1) that applications for a stay under the Soldiers' and Sailors' Civil Relief Act, as amended, are addressed to the discretion of the trial court, Gross v. Williams, 8 Cir., 149 F.2d 84; (2) that section 521 of that Act does not erect an absolute bar to proceedings against one in the military service so as to entitle him to a stay of proceedings and an indefinite continuation, Fourth Nat. Bank in Wichita v. Hill, 1957, 181 Kan. 683, 314 P.2d 312; (3) that determination of an application for stay under this section depends upon the facts and circumstances in each case, Graves v. Bednar, 1959, 167 Neb. 847, 95 N.W.2d 123; (4) that discretion is vested in the courts to deny a stay when *enlistment is part of a design or policy, instead of the result of military service,* Boone v. Lightner, 1943, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587, rehearing denied 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489. See also Esposito v. Schille, 1944, 131 Conn. 449, 40 A.2d 745; State ex rel. Goehler v. Ladriere, 1945, 354 Mo. 515, 189 S.W.2d 986; and (5) while immunity sought under section 521 may be used as a *"shield for defense"*, it is not an *"instrument for the oppression of opposing parties"*, State ex rel. Swanson v. Heaton, 1946, 237 Iowa 564, 22 N.W.2d 815, 816. See also Cox

v. Yates, 1957, 96 Ga.App. 466, 100 S.E. 2d 649.

 Whether all of those points were or weren't raised on the argument of that motion was of no significance, as the claim came on for consideration during the proceedings which are here for review. It is important, only, to note, that the applicant has had her day in court as to the argument for a stay, that the pros and cons were finally settled as the state court in the paternity action rendered its decision, whether by special order as the Referee held, or by its final judgment, and that relitigation of the same issues in these proceedings cannot be permitted.

The Office of Appeals Council, denial herein of the Request for Review, is hereby in all respects affirmed and the plaintiff's complaint for Review of the Administration Decision, is hereby dismissed.